IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID N. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 C 7126 |
| ) | |
| ALLIED INTERSTATE, INC., a Minnesota ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff David N. Miller filed a two-count Complaint alleging that Defendant Allied Interstate, Inc. ("Allied") violated the Fair Debt Collection Practices Act ("FDCPA") by attempting to collect a debt that was subject to his bankruptcy proceedings. *See* 15 U.S.C. § 1692 *et seq.* Before the Court is Miller's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, the Court denies Miller's motion.

## BACKGROUND

Allied, a Minnesota corporation, is a debt collector as defined by Section 1692a of the FDCPA. (R. 20-1, Plaintiff's Local Rule 56.1 Statement of Material Facts, ¶ 4.) On May 28, 2004, Miller filed a voluntary Chapter 7 bankruptcy petition. (*Id.* ¶ 5.) Miller owed consumer debt to Verizon Wireless and Sprint, both of which were listed on his "Schedule F – Creditors Holding Unsecured Nonpriority Claims." (*Id.* ¶ 6, R. 1-1, Compl., Ex. A.) The Bankruptcy Court for the Northern District of Illinois sent notice of Miller's bankruptcy to Verizon Wireless c/o NCO Financial Systems and to Sprint c/o Allied. (*Id.* ¶ 7, Compl., Ex. B.) On September 20, 2004, the bankruptcy court discharged Miller's debts. (*Id.* ¶ 8, Compl., Ex. C.) Thereafter, the

bankruptcy court sent notice of Miller's discharge to Sprint c/o Allied and Verizon Wireless c/o NCO Financial Systems. (*Id.*, Complaint, Ex. C.) On October 14, 2004, Allied sent Miller a dunning letter seeking to collect on a debt Miller owed to Verizon Wireless. (*Id.* ¶ 9.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Id.* at 255. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## ANALYSIS

**I.    Count I – False, Deceptive or Misleading Collection Activities**

Miller contends that Allied's attempt to collect his discharged Verizon Wireless debt violated Section 1692e of the FDCPA. Section 1692e prohibits "false, deceptive or misleading" collection activities. *See* 15 U.S.C. § 1692e(2)(A); *see also Turner v. J.V.D.B. & Assocs. Inc.,* 330 F.3d 991, 995 (7th Cir. 2003). Section 1692e(2)(A) creates a strict liability rule – "Debt collectors may not make false claims, period." *Randolph v. I.M.B.S., Inc.,* 368 F.3d 726, 730 (7th Cir. 2004). A demand to collect a discharged debt is considered a false collection activity under Section

1692e(2)(A).  *Id*. at 728.

The FDCPA, however, provides an affirmative defense to false collection activities, also known as the "bona fide error defense."  *See* 15 U.S.C. § 1692k(c); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005).  To qualify for the bona fide error defense, a defendant must establish that:  (1) the FDCPA violation was not intentional and resulted from a bona fide error; and (2) it maintained procedures reasonably adapted to avoid such errors.  *Turner,* 330 F.3d at 995-96.  The defendant bears the burden of proving the bona fide error defense by a preponderance of the evidence.  *See Jenkins v. Heintz,* 124 F.3d 824, 834 (7th Cir. 1997).

Allied does not dispute that it sent a dunning letter to Miller for the discharged Verizon Wireless debt.  Instead, Allied asserts the bona fide error defense.  To support this affirmative defense, Defendant provides the affidavit of Allied's Vice President, David Johnson, averring that Allied maintains procedures to avoid FDCPA violations.  In his affidavit, Johnson avers that Allied "scrubs" each account for prior bankruptcies using a Lexis-Nexis search, the outcome of which is recorded as "Banko Banko" in the "Carma Debtor Profile."[1]  (R. 27-1, Defendants' Local Rule 56.1 Statement of Additional Facts, ¶ 1, Johnson Affidavit, Ex. 1.)  Johnson further avers that the Carma Debtor Profile is a business record that contains the results of the Lexis-Nexis searches.  (*Id*. ¶ 3.)  Attached to Johnson's affidavit is a one page copy of Miller's Carma Debt Profile reflecting Miller's Verizon Wireless debt.  (*Id.* ¶ 7, Johnson Aff., Attachment 1.)  Finally, Allied contends that under this procedure, if the Lexis-Nexis search identifies a bankruptcy, the account is closed and returned to Allied's client.  (*Id*. ¶ 2.)  The Johnson affidavit is the only

---

[1] Although Allied never identifies what Lexis-Nexis database it used, the Court assumes that the Johnson affidavit is referring to the Banko database, which is an on-line service for checking bankruptcy records.  *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004).

evidence Allied presents in support of its bona fide error defense.

First, Miller argues that Johnson's affidavit contains inadmissible hearsay. *See Markel v. Board of Regents of the Univ. of Wisconsin*, 276 F.3d 906, 912 (7th Cir. 2002) ("supporting and opposing affidavits must contain facts that would be admissible at trial" ); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial"). In his affidavit, however, Johnson avers that he is familiar with the computer database and how the data is entered, stored, and retrieved from the database. (Johnson Aff., ¶ 3.) Johnson's statement is admissible in the present summary judgment proceedings. *See Central Illinois Light Co. v. Consolidation Coal Co.*, 349 F.3d 488, 493 (7th Cir. 2003).

Miller also argues that Johnson's affidavit is vague and conclusory, and thus the Court should not rely on Allied's statement of facts. *See Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 736 (7th Cir. 2004) ("conclusory and immaterial statements contained in an affidavit are insufficient to bar summary judgment"). Indeed, Johnson's affidavit lacks detailed information concerning how Allied conducted the Lexis-Nexis search, what search terms were used, who did the Lexis-Nexis search, and what the actual results were. Nonetheless, the affidavit indicates that Allied had a procedure to search a database on Lexis-Nexis to uncover debtors in bankruptcy. Whether this procedure was reasonable is a separate question.

Various Seventh Circuit decisions are instructive in determining whether a debt collector has reasonable procedures in place to avoid FDCPA violations. In *Jenkins*, the court concluded that the defendants had a reasonable procedure because they offered unrebutted evidence of an eight-step process to ensure accuracy of their files that included review of their employees' work. *Id.* at 834. In *Kort*, because the defendants used the Department of Education's form concerning

4

garnishment proceedings of student loans, the Seventh Circuit concluded that the defendants' procedure was reasonable because it adopted the federal agency's legal interpretation of the Higher Education Act. *Id.* at 538. In another case, the Seventh Circuit concluded that defendants had adopted a reasonable procedure because they established that they had an agreement with the creditor that the creditor would not forward bankruptcy files for collection. *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). These defendants also established that once they discovered a bankruptcy account, they would cancel the collection of the debt. *Id.*

Here, Johnson avers that there was a procedure to remove bankruptcy files from Allied's debt collection process once they were discovered. Further, although Johnson's other statements do not fully explain the procedures used when conducting the Lexis-Nexis database search, Johnson asserts that he has personal knowledge of the database searches, including how they are conducted. Accordingly, Allied has presented sufficient evidence to create a genuine issue of material fact for trial concerning its affirmative defense. *See Hyman,* 362 F.3d at 968 (FDCPA does not require debt collectors to independently verify each debt for bona fide error defense).

As to the other element of the bona fide error defense, "a debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Kort,* 394 F.3d 537. Here, Allied asserts that Miller only listed Allied as representing Sprint, not Verizon Wireless, on his "Schedule F – Creditors Holding Unsecured Nonpriority Claims." (*See* Complaint, Ex. A.) As such, Allied has factually supported its allegation that it did not have notice of Miller's discharged Verizon Wireless debt, and thus has raised a genuine issue of material fact as to whether Allied's dunning letter to Miller was unintentional. *Nielsen v. Dickerson,* 307 F.3d 623, 641 (7th Cir. 2002) (debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate").

5

In sum, viewing the evidence and reasonable inferences in a light most favorable to Defendant, Allied has established that there is a genuine issue of material fact that it unintentionally violated the FDCPA and that it maintained procedures reasonably adapted to avoid violating the FDCPA. *See* 15 U.S.C. § 1692k(c); *Jenkins,* 124 F.3d at 834. Therefore, the Court denies Miller's summary judgment motion as to Count I of the Complaint.

## II. Count II – Communication with Debtors

Next, Miller contends that Allied's October 14, 2004, collection letter violated Section 1692c(a) of the FDCPA because Allied directly communicated with him. Under Section 1692c(a)(2), a debt collector is prohibited from communicating with a debtor whom it knows is represented by counsel. *See Thomas v. Law Firm of Simpson & Cybak,* 392 F.3d 914, 920 (7th Cir. 2004) (en banc); *see also Jenkins*, 124 F.3d at 832 (debt collector must communicate with consumer's attorney). Liability turns on the debt collector's knowledge. *Randolph,* 368 F.3d at 730.

Here, Allied contends that it had no knowledge that Miller was represented by an attorney as to the Verizon Wireless debt when it sent the dunning letter. Specifically, Allied contends that it was not notified of the discharged Verizon Wireless debt because Miller did not list Allied as representing Verizon Wireless on his Schedule F form. Although Allied admits that it received actual notice of Miller's Sprint debt, Allied contends it must have actual knowledge that Miller was represented by counsel as to the Verizon Wireless debt to be liable under the statute. *See Hubbard v. National Bond & Collection Assocs., Inc.,* 126 B.R. 422, 426 (Bankr. D.Del. 1991) (defendant must have actual knowledge that debtor represented by counsel as to specific debt) (listing cases); *see also Graziano v. Harrison,* 950 F.2d 107, 113 (3d Cir. 1991) (attorney's representation must be specific to debt in question).

Indeed, Section 1692c(a)(2) prohibits a debt collector from communicating directly with a consumer "if the debt collector knows the consumer is represented by an attorney *with respect to such debt* and has knowledge of, or can readily ascertain such attorney's name and address." 15 U.S.C. § 1692c(a)(2) (emphasis added). Based on this language, the Third Circuit in *Graziano* concluded that knowledge of representation with respect to a different debt did not preclude the debt collector from communicating directly with the consumer on another debt collection matter. *Id.* at 113; *see also Berndt v. Fairfield Resorts, Inc.,* 337 F.Supp.2d 1120, 1132-33 (W.D. Wis. 2004) (adopting *Graziano* reasoning); *Raimondi v. McAllister & Assocs., Inc.*, 50 F.Supp.2d 825, 828 (N.D. Ill. 1999) (citing *Hubbard v. National Bond & Collection Assocs., Inc.,* 126 B.R. 422, 426 (Bankr. D.Del. 1991)).

Again, viewing the evidence and all reasonable inferences in a light most favorable to Defendant, Allied has set forth evidence creating an genuine issue of fact as to whether it knew Miller was represented by counsel as to the Verizon Wireless debt. *See Randolph,* 368 F.3d at 730 (liability turns on debt collector's knowledge). Hence, Miller has failed in his burden of establishing that there is a lack of any genuine issue of material fact for trial. *See Celotex Corp.,* 477 U.S. at 323. The Court denies Miller's summary judgment motion as to Count II of the Complaint.

## CONCLUSION

For these reasons, the Court denies Plaintiff's Motion for Summary Judgment.

Dated: June 27, 2005

                                   **ENTERED**

                                   _____
                                   **AMY J. ST. EVE**
                                   **United States District Court Judge**